United States District Court
Western District of Washington At Seattle

Della W. Edrington and Patrick S. Edrington

                Plaintiffs,

vs.

Holland America Line N.V., a Curacao corporation; HAL Antillen N.V., a Curacao corporation; HAL Nederland N.V., a Curacao corporation; Holland America Line USA Inc., a Delaware corporation; Carnival Corporation, a Panama Company; and XYZ Corporation, *in personam*; MS ZAANDAM, its engines, appurtances, freight, cruise fares and tackle, *in rem*;

                Defendants.

No.  21-cv-

Complaint For Damages For Personal Injuries

Jury Demand

Plaintiffs, Della and Patrick Edrington, for cause of action against Defendants, allege and state as follows:

## PARTIES

1.  Plaintiffs Della W. Edrington and Patrick S. Edrington are now, and were at all times mentioned in this complaint, residing in the state of Virginia.

2.  The Defendant Holland America Line N.V., is now, and was at all times material a foreign corporation, and an owner and or operator of the MS ZAANDAM.

Complaint For Damages For Personal Injuries - 1

Case No. 21-cv-

Moure Law, pllc
A Professional Limited Liability Company
1521 Second Avenue, Suite 1400
Seattle, WA  98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

3. The Defendant HAL Antillen N.V., is now, and was at all times material a Curacao corporation and the owner and or operator of the MS ZAANDAM.

4. The Defendant HAL Nederland N.V., is now, and was at all times material a Curacao corporation and the owner and or operator of the MS ZAANDAM.

5. The Defendant Holland America Line-USA Inc., is now, and was at all times material, a Delaware corporation and the owner and or operator of the cruise ship MS ZAANDAM on which the subject incident occurred.  At all times material Holland America Line-USA Inc. was the agent of the other named Defendants.

6. At all times material, Defendant Carnival Corporation was a Foreign profit corporation, the corporate parent of the other in personam defendants, and upon information and belief an owner, manager, operator and/or charterer of the cruise ship MS ZAANDAM doing business in the Western District of Washington.

7. Defendant, XYZ Corporation, is named if discovery reveals that another entity, whose name is not yet known, owns, manages, or operates the vessel, MS ZAANDAM.

8. At all times relevant and material to this complaint, Defendants acted through their agents, employees, and/or representatives, who in turn acted within the scope of their employment and/or agency.

9. At all times relevant and material to this complaint, one or more of the Defendants were bound by contract(s) or agreement(s) with other parties, requiring Defendants, either on their own behalf and/or on behalf of other parties, to maintain, operate, and otherwise control the subject cruise ship in a ways that would be safe for use by passengers and invitees.

Complaint For Damages
For Personal Injuries - 2
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA  98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

## JURISDICTION AND VENUE

10. This court has jurisdiction under 28 U.S.C. §§ 1332 and 1333, 46 U.S.C. § 30302, and or under the general maritime law, and under the contract(s) of carriage under which the claims are brought. Jurisdiction is thus based on the court's admiralty jurisdiction and pursuant 28 U.S.C. § 1332 as there is complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants.

12. Venue is proper in this Judicial District under 28 U.S.C. § 1391 (b) and (c) because Defendants are subject to personal jurisdiction in this Judicial District and therefore are deemed to reside in this District.

13. All conditions precedent for filing and maintaining this action have been satisfied, have been waived, or do not apply.

## FACTS

14. Plaintiffs entered into a contract of carriage with Defendants for the purpose of a cruise aboard the ship MS ZAANDAM. The cruise commenced on March 7, 2020, in Buenos Aries, Argentina and was scheduled to end on April 7, 2020 in Ft. Lauderdale, Florida.

15. On March 7, 2020, the Edringtons boarded the MS ZAANDAM, a Holland America vessel, in Buenos Aires, Argentina with the intention of taking the cruise around

Complaint For Damages
For Personal Injuries - 3
Case No. 21-cv-

Moure Law, pllc
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

South America and through the Panama Canal and finishing the cruise in Ft. Lauderdale, Florida.

16. At the time of boarding and before the MS ZAANDAM sailed on March 7, 2020, Defendants were well aware of the dangers posed by COVID-19.

17. Defendants had experience with mass infections on their cruises and knew that its passengers demographic was at very high risk for contracting and suffering serious complications from COVID-19.

18. Defendants knew that it lacked capacity to effectively deal with serious infectious diseases on its vessels.

19. The World Health Organization (WHO) declared COVID-19 a world health emergency of the highest level in January 2020.

20. The United States Center for Disease Control and Infection (CDC) made available in early February 2020 their COVID-19 guidance for ships.

21. The WHO provided significant guidance for minimizing the risks of COVID-19 well before the MS ZAANDAM sailed.

22. The Defendants knew about the specific dangers COVID-19 posed to people living and working in close-quarters before it allowed the Edringtons to board the MZ ZAANDAM.

23. At the time of sailing, and since February 3, 2020, the Diamond Princess, owned by Carnival and a sister company to HAL, Princess, had been under quarantine at Yokohama's port near Tokyo, Japan.

Complaint For Damages
For Personal Injuries - 4
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

24. At the time of sailing, the Grand Princess, also owned by Princess, was in the midst of its own COVID-19 outbreak and trying to obtain permission to dock in Oakland, CA.

25. Defendants knew that COVID-19 had created a pandemic and that COVID-19 was highly contagious and especially rapidly transmitted in close and closed environments such as cruise ships.

26. HAL's Chief Medical Director, Dr. Grant Tarling, also serves as the Chief Medical Director for both Carnival and Princess and has extensive experience in public health including infectious diseases.

27. Dr. Tarling was fully informed and aware of the way in which COVID-19 was creating mass-casualties on cruise ships well before the MS ZAANDAM sailed.

28. Sailing despite knowing that the world was in the grips of a pandemic and that cruise ships were among the most dangerous places for older people on earth created a specifically foreseeable risk to the passengers on the MS ZAANDAM, including Plaintiffs.

29. Based on the information known to Defendants on or before March 7, 2020, the MS ZAANDAM should not have sailed, and it was gross negligence for the Defendants to allow the vessel to sail.

30. Prior to boarding the vessel, the Edringtons filled out a medical questionnaire, responding truthfully that they were not ill in any way as they came on the vessel feeling fine. The questionnaire stated nothing about COVID-19 and Defendants failed to provide passengers any warnings, instructions, or any information regarding a potential for a COVID-19 outbreak on the vessel.

Complaint For Damages
For Personal Injuries - 5
Case No. 21-cv-

Moure Law, pllc
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

31. During the initial days on the cruise, Defendants implemented zero safety procedure on the vessel as they pertain to COVID-19. No temperature checking, no wearing of facial masks, and no social distancing procedures were put in place by Defendants, despite an overwhelming amount of information available to Defendants as to heightened risk Defendants were subjecting its passengers to. These failures constitute gross negligence.

32. On March 9, 2020, the Edringtons, still feeling fine, disembarked from the vessel at Montevideo, Uruguay to tour the port city. As they had up to this point, Defendants not only allowed the passengers to come into contact with the local populace, but they also continued to provide zero guidance about taking precautions regarding contracting COVID-19 during the excursion.

33. On March 11, 2020, the Edringtons received letter from the vessel's captain which stated that the CDC had recommended additional cleaning procedures on board and that staff would be serving food from buffet rather than allowing guests to serve themselves. This was the first time that Defendants had mentioned anything about COVID-19 to the Edringtons and that the vessel staff implemented any sort of unique procedures related to possible infection. The Captain failed to implement any other procedures to limit an outbreak on board the vessel such as social distancing, stepped up handwashing, and mask wearing. The Captain also failed to do what any prudent mariner would have done, which would have been to put the vessel in port, cancel the cruise, and send the passenger home after a 14-day quarantine.

34. The cruise proceeded on course and shore excursions, where passengers came into contact with potentially dozens or hundreds of people who were not passengers on the

Complaint For Damages
For Personal Injuries - 6
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

ship, continued unchanged.  On March 12, 2020, the Edringtons again disembarked the vessel, this time in the Falkland Islands, and again Defendants failed to provide any cautions or instructions as to how to stay safe while ashore as related to COVID 19.

35. On March 14, 2020, the Edringtons again disembarked the vessel at Punta Arenas, Chile to participate in a HAL tour called the "A Voyage into the Past: Magellan's Discovery" with stops at a downtown public park, a town view from a public hillside, a downtown museum, and an outdoor nautical display of boats.  This was all done via bus chartered by Defendants.  Again, Defendants not only hosted this venture, but provided no instructions regarding staying safe as related to COVID-19.  Defendants employed no safety procedures on the bus regarding infection.  Defendants were grossly negligent to allow the tour to go forward at all.

36. On March 14, 2020, the Edringtons received a letter from the captain of the vessel stating that because President Trump had declared a national state of emergency, and even though no crew member or passenger had tested positive for COVID-19, a decision had been made by Defendants to pause global operations and that the cruise would continue to San Antonio, Chile on March 21, 2021, but the cruise would end there and the passengers would have to disembark.  The cruise would not continue on to Ft. Lauderdale as scheduled.

37. The Edringtons had not received a test for COVID-19 at this time so it is impossible to know if they and the other passengers had been exposed to COVID-19 at this point in the cruise.

Complaint For Damages
For Personal Injuries - 7
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

38. On March 15, 2020, the Edringtons received their first notice that ship personnel would be checking the passengers' temperature. This occurred at the mainstage on the vessel, causing all of the passengers to congregate in a central place.

39. Passengers continued to be allowed to line up for the buffet. Without any instruction by Defendants – who had full access to several sources of information regarding the infection process specifically related to COVID-19 – that it might be dangerous to do so, they sat together at dining tables. They roamed the ship, hung out together at the pool, attended nightly entertainment, and used the ship's other amenities.

40. Unbelievably, despite a worldwide pandemic and over ten cruise ships worldwide experiencing massive COVID-19 outbreaks, on March 21 the vessel had a Happy Hour on the vessel at the Crow's Nest which was packed with numerous passengers and crew serving drinks. The Edringtons went to the Happy Hour but did not order drinks, heard many passengers coughing, immediately understood the insanity of the situation, returned directly to their cabins and ordered dinner by room service. They also made the decision to start ordering all meals in their cabin and to self-isolate as much as possible until the cruise terminated. This was done out of self-preservation and without any instructions from the captain or the medical team or any other cruise personnel to do so.

41. Finally, on March 22, the Captain and the medical team on the vessel instructed all passengers to stay in their cabins and established that all meals would be delivered to the cabins.

Complaint For Damages
For Personal Injuries - 8
Case No. 21-cv-

Moure Law, pllc
A Professional Limited Liability Company
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

42. Later that day, the Edringtons received a letter from the Chief Medical Officer for HAL stating that a "a higher-than-usual number of guests and crew reported to the medical center with symptoms of acute respiratory illness."

43. No countries, including Chile, would allow the vessel to dock as they feared allowing COVID-infected passengers to disembark into their populace. Defendants then decided to take the vessel back to the US via the Panama Canal and disembark in Port Everglades, located in Ft. Lauderdale, Florida.

44. On the morning of March 25, 2020, still on the vessel, the Edringtons woke up not feeling well.  The Edringtons both had a slight cough and low-grade fevers.  They reported their illness to the ship's doctor as instructed. As it turns out, they both had contracted COVID-19 on the vessel. The onset was rather mild, involving mainly a slight, dry cough.

45. The ship's doctor prescribed Robitussin Mucus cough medicine and DM syrup for the night to the Edringtons which provided some temporary relief.  After a few days the cough became more painful and more pronounced and continuous causing intense pain which lasted for days.  The Edringtons next experienced pronounced intestinal distress, including diarrhea and vomiting that went on for days while being confined to the cabin and being extremely ill.

46. Mr. Edrington also began to experience higher fever of 100 degrees.  The vessel medical staff prescribed over the counter pain medication.  The Edringtons began to also experience extreme weakness and Mr. Edrington fell five times after falling ill because he became very weak due to COVID-19 and had a very difficult time moving around the cabin. Both of the Edringtons lost their sense of smell and taste during the acute phase of the illness

Complaint For Damages
For Personal Injuries - 9
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

and neither have regained their sense of smell and taste to the date of this filing causing extreme anxiety and mental anguish.

47. After spending eleven days confined to their cabins, and being extremely ill due to COVID-19, on April 3, 2020 the Edringtons were allowed to disembark in Ft. Lauderdale Florida even though they were still experiencing significant COVID-related symptoms.

48. The Edringtons flew home later that day and both self-isolated for 20 days, per the advice on Mr. Edrington's physician, at home.

49. They both continue to experience COVID-19 symptoms such as weakness and memory loss.

50. Both of the Edringtons have tested positive for the COVID antibodies.

51. Mr. Edrington, after receiving his first dose of a COVID vaccine experienced a serious reaction requiring that he be admitted to the hospital.

## CAUSES OF ACTION

### Negligence

52. Plaintiff re-alleges the allegations in Paragraphs 1-52 as though set forth fully herein.

53. Defendants, as owners and operators of the vessel, owed Plaintiffs an affirmative duty of reasonable care under the circumstances, or alternatively, a higher duty of care commensurate with their common maritime carrier/passenger relationship to Plaintiffs.

Complaint For Damages
For Personal Injuries - 10
Case No. 21-cv-

Moure Law, pllc
A Professional Limited Liability Company
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

54. Defendants owed Plaintiffs a duty to maintain the vessel in a safe condition and to warn passengers of dangerous conditions.

55. Defendants knew or should have known of the defective and unreasonably dangerous conditions as the Defendants had ample notice of the COVID pandemic prior to departure of the vessel on March 7.

56. On or about March 7, 2020, Defendants, their agents and or employees breached their duty of care to Plaintiffs in one or more of the following ways, but in no way limited to:

    a. Defendants failed to use reasonable care to safeguard the Plaintiffs during their cruise;

    b. Defendants failed to use reasonable care to inspect for hazards and to maintain the vessel in a safe condition;

    c. Defendants failed to take reasonable steps to correct and or eliminate known existing hazards and dangers presented to the Plaintiffs by failing to do the following;

- Cancel the cruise and refund the passengers' fares immediately.
- Adequate re-boarding health screening.
- Reasonable evaluation by medical staff.
- Ongoing health checks for guests and crew.
- Contact tracing plans in case of onboard illness.
- Expanded disinfection methods.
- Sanitizing staterooms and public areas multiple times a day.

Complaint For Damages
For Personal Injuries - 11
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

- Sanitizing transfer coaches and terminal.
- Instituting physical distancing by adjusting the flow, timing, and size of groups on the vessel.
- Providing additional handwashing facilities and hand-sanitizing stations positioned in high-traffic areas throughout the ship.
- Providing regular health information about the ways to stay healthy on board and when ashore through daily programming, entertainment systems, announcements, in-stateroom literature and its Navigator App.
- Modifying shipboard medical centers for infection control best practices, including dedicated air handling systems with 100 percent fresh air supply and HEPA exhaust filtration.
- Establishing COVID-19 testing capabilities on board and/or ashore with designated laboratories for potential cases aboard the vessel.
- Providing dedicated isolation and quarantine facilities for passengers and crew who developed symptoms.
- Requiring ongoing training and education of shipboard medical staff in the latest clinical care practices for managing COVID-19 cases.

Complaint For Damages
For Personal Injuries - 12
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

- Training of all crew in COVID-19 health protocols and how to assist with monitoring compliance with health measures by both guests and crew.

d. Defendants failed to take reasonable steps to warn the Plaintiffs of known dangers and hazards presented to passengers like the Plaintiffs;

e. Defendants failed to provide Plaintiffs with a safe vessel;

g. Defendants failed to warn Plaintiffs of known safety hazards and to provide notice of reasonably foreseeable dangerous conditions and to protect Plaintiffs from the unsafe hazards presented by maritime travel, dangerous conditions, and seas, such as contracting an illness on the vessel.

57. The negligent acts and omissions of Defendants both directly and proximately caused Plaintiffs' serious illness including nausea, coughing, intestinal problems, memory loss, fatigue, and permanent loss of sense of smell and taste. The full extent of these injuries is not fully known at this time. Plaintiffs pray leave to amend this complaint when the full extent of injuries and disabilities is ascertained.

58. At all times material, Plaintiffs were acting with due care for their own safety.

## **GROSS NEGLIGENCE**

59. The Defendants breached its duties to the Edringtons by sailing, failing to adequately screen passengers and crew, failing to timely and effectively implement precautions, and failure to reasonably manage alcohol consumption.

Complaint For Damages
For Personal Injuries - 13
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

60. Not only were Defendants negligent in each of these respects, but its failings were also substantially and appreciably greater than ordinary negligence.

61. As a proximate cause of Defendants' negligence, the Edringtons both contracted COVID-19 and related symptoms on the vessel.

62. The negligent acts and omissions of Defendants both directly and proximately caused Plaintiffs' serious illness including memory loss, fatigue, loss of sense of smell and taste. The full extent of these injuries is not fully known at this time. Plaintiffs pray leave to amend this complaint when the full extent of injuries and disabilities is ascertained.

## DAMAGES

63. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered serious illness, including but not limited to loss of memory, fatigue, loss of sense of smell and loss of taste. The Plaintiffs' injuries resulted in pecuniary and other compensable losses, including significant past and future reasonable and necessary medical and health care expenses. These include, but are in no way limited to, medical and physical therapy charges and co-pays, prescription and health care aid fees and costs, and other past and future heath care fees, charges and co-pays to be determined at the time of trial.

64. As a direct and proximate result of Defendants' negligence, Plaintiffs incurred past and future out-of-pocket expenses in connection with their reasonable and necessary medical treatment including, but in no way limited to, transportation to obtain healthcare, and for household services, assistance, and other out-of-pocket costs, including the cost of their cruise, in amounts to be proven at the time of trial.

For Personal Injuries - 14
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

65.     As a direct and proximate result of Defendants' negligence, Plaintiffs experienced physical and emotional injuries, including but in no way limited to, permanent physical impairment, pain, suffering, disability, limitations and loss of enjoyment of life in the past, and Plaintiffs will with reasonable certainty continue to experience such injuries and general damages in the future.

## JURY DEMAND

66.     Plaintiffs demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment against Defendants, jointly and severally, as follows:

   a.   For money judgment in such an amount that will fully and fairly compensate Plaintiffs for their injuries, including general damages, special damages, and all other damages to be proven at trial;

   b.   For arrest and judicial sale of the MS ZAANDAM, its engines, appurtenances, freight, cruise fares, tackle and appurtenances;

   c.   For all expenses of health care providers, past, present and future;

   d.   For attorney fees, taxable costs and disbursements;

   e.   For prejudgment interest, and

   f.   For post-judgment interest and other relief allowed by the Court.

//

Complaint For Damages
For Personal Injuries - 15
Case No. 21-cv-

**Moure Law, pllc**
*A Professional Limited Liability Company*
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293

DATED this 4th day of March 2021.

s/Charles P. Moure
_____
CHARLES P. MOURE, WSBA # 23701
1521 Second Avenue, Suite 1400
Seattle, Washington 98101
Telephone 206.300.2351
Email: Charles@mourelaw.com
Attorney for Plaintiffs

DATED this 4th day of March 2, 2021.

s/Gordon C. Webb
_____
GORDON C. WEBB, WSBA # 22777
225 106th Avenue NE
Bellevue, Washington 98004
Telephone 425.454.3800
E-mail Gordon@webblawfirm.net
Attorney for Plaintiffs

VERIFICATION

Charles Moure, being first dully sworn, deposes and says:

That I have read the forgoing Complaint and that all of the facts and allegations therein are true and correct to the best of my knowledge under penalty of perjury of the laws of the State of Washington and of the United States.

Dated Thursday, March 04, 2021

Moure Law, pllc

/sCharles Moure_____
Charles Moure, WSBA #23701

Complaint For Damages
For Personal Injuries - 16
Case No. 21-cv-

**Moure Law, pllc**
A Professional Limited Liability Company
1521 Second Avenue, Suite 1400
Seattle, WA 98101
Phone: (206) 300-2351
Fax: (206) 206-374-2293